**ARMILLA STALEY-NGOMO**
California State Bar No. 259686
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Email: Armilla_Staley-Ngomo@fd.org

Attorneys for Defendant
MIGUEL JOSE MAYNE GARCIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>MIGUEL JOSE MAYNE GARCIA,<br><br>　　　　　　　Defendant. | CASE NO.: 20MJ0780-KSC<br><br>Hon. Karen S. Crawford<br><br>**MOTION FOR AMENDMENT OF RELEASE CONDITIONS** |

　　　　Miguel Jose Mayne Garcia hereby respectfully requests that the Court amend his conditions of release. Mr. Mayne is a pretrial defendant within the group of people most at risk of serious illness or death from the COVID-19 virus because he is 64 years old, has diabetes and high blood pressure, and recently had a medical procedure performed on his heart shortly before his arrest. Mr. Mayne has been detained at the Metropolitan Correctional Center (MCC) since February 20, 2020, and was recently taken to a local medical facility during the weekend of February 29, 2020 and March 1, 2020 due to his heart condition. As explained below, local detention facilities in and near San Diego face a heighten possibility of infection. The Fifth, Sixth, and Eighth Amendments, Bail Reform Act, and humanitarian concerns counsel in favor of releasing Mr. Mayne on personal recognizance or other conditions that will permit Mr. Mayne's immediate release.

## I. The Court ordered Mr. Mayne released, but Mr. Mayne remains detained due to an inability to make bond.

This Court previously ordered Mr. Mayne released on a $25,000 personal appearance bond, secured by the co-signatures of two financially responsible adults and a ten percent cash deposit. (See Docket No. 5.) Despite counsel's diligent efforts and investigation, Mr. Mayne remains detained due to an inability to make the bond set by the Court. Mr. Mayne has been in custody for a total of 23 days.

## II. Mr. Mayne is at a high risk of dying or hospitalization from COVID-19 without self-quarantine at home.

COVID-19 is more dangerous for some than others. Unfortunately, Mr. Mayne is in the category of people who are in a great deal of danger upon contracting this contagious disease. As stated, Mr. Mayne is 64 years old, has diabetes, high blood pressure, and a heart condition, and is in extremely poor health. To make matters worse, the MCC recently informed Federal Defenders of San Diego, Inc. that all legal visits are suspended for the next thirty days, which will make it impossible for defense counsel to meet with Mr. Mayne to monitor his medical condition and potential exposure to COVID-19.

COVID-19 is an illness from which most people recover. Among all people with confirmed cases, existing information shows that about 80% experience mild symptoms, 20% are severely or critically ill, and roughly 2% die.[1] Within these

---

[1] *See* Centers for Disease Control and Prevention, *Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVI*-19), March 7, 2020 ("CDC Interim Clinical Guidance"), available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html#foot09; European Centre for Disease Prevention & Control, *Daily risk assessment on COVID-19*, 12 March 2020, available at https://www.ecdc.europa.eu/en/current-risk-assessment-novel-coronavirus-situation ("ECDPC Daily Risk Assessment"); Novel Coronavirus Pneumonia Emergency Response Epidemiology Team, *The Epidemiological Characteristics of an Outbreak of 2019 Novel Coronavirus Diseases (COVID-19) in China*, 41 Zhonghua Liu Xing Bing Xue Za Zhi 145, Feb. 17, 2020, available at https://pubmed.ncbi.nlm.nih.gov/32064853-the-epidemiological-characteristics-of-an-outbreak-of-2019-novel-coronavirus-diseases-covid-19-in-china/.

general statistics, however, two categories of people are vastly more likely to suffer severe symptoms or die: older people and people with chronic medical conditions.

Older people with coronavirus are more likely to die. As of February, those diagnosed with coronavirus between the ages of 60 and 69 had a 3.6% risk of dying; those between 70 and 79 had an 8% chance of dying; and those 80 or above had a 14.8% chance of dying.[2]

Older people diagnosed with coronavirus are also much more likely to be very sick. The median age of someone hospitalized with coronavirus is 66, whereas the median age of someone with more mild symptoms is 51.[3] People who need to be hospitalized have an array of severe symptoms, including acute respiratory distress, cardiac injury, arrhythmia, septic shock, liver dysfunction, acute kidney injury, and multi-organ failure.[4] Of those admitted to a hospital for coronavirus, the majority are so sick as to be placed on mechanical ventilators; many others receive various advanced organ support.[5]

People with chronic medical conditions, no matter their age, are also at significantly greater risk from COVID-19. Slightly less than one percent of those diagnosed with coronavirus, but no other major underlying medical conditions, have died.[6] By contrast, 6% of those with chronic respiratory disease, hypertension, or cancer died. Of those with diabetes, 7% died. And 10.5% of those with cardiovascular disease died.[7]

Based on this evidence, significant risk factors for progressing to more severe illness after contracting COVID-19 appear to include "older age, and underlying

---

[2] CDC Interim Clinical Guidance, at "Clinical Presentation."
[3] *Id.* at "Clinical Course."
[4] *Id.*
[5] *Id.*
[6] *Id.* at "Clinical Presentation."
[7] *Id.*

chronic medical conditions such as lung disease, cancer, heart failure, cerebrovascular disease, renal disease, liver disease, diabetes, immunocompromising conditions, and pregnancy."[8]

That is why the CDC urges that it is "extra important" for older people and those with chronic medical conditions "to take actions to reduce [their] risk of getting sick with the disease."[9] The CDC has explained that people in this higher risk category must "[a]void crowds as much as possible" and "stay home as much as possible," particularly once there a COVID-19 outbreak in their community.[10] There is general consensus in the public health community in California and San Diego that there is one most important thing for those at risk of severe illness or death from COVID-19: staying home, away from groups of 10 or more people.[11]

### III. Local detention facilities are more likely to become infected and are ill-prepared to help people like Mr. Mayne avoid contracting COVID-19.

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease.[12] Prisons and jails "have become breeding grounds for infectious epidemics, with severe consequences for both prisoners and the public alike."[13] According to public health experts, incarcerated individuals

---

[8] *Id.* at "Clinical Management and Treatment."

[9] Centers for Disease Control and Prevention, *People at Risk for Serious Illness from COVID-19*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html.

[10] *Id.*

[11] *See, e.g.*, California Department of Public Health, COVID-19 Notice, March 11, 2020, available at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/Gathering_Guidance_03.11.20.pdf (recommending that, in California, "[g]atherings of individuals who are at higher risk for severe illness from COVID-19 should be limited to no more than 10 people"); José A. Álvarez, County of San Diego Communications Office, *Social Distancing, Visiting Restrictions Established*, March 12, 2020, available at https://www.countynewscenter.com/social-distancing-visiting-restrictions-established-mass-gatherings-banned-5-more-positive-covid-19-cases-reported-locally/ (same).

[12] Joseph A. Bick, Infection Control in Jails and Prisons, 45 *Clinical Infectious Diseases* 1047, 1047–55 (2007), available at https://doi.org/10.1086/521910.

[13] John E. Dannenberg, *Prisons as Incubators and Spreaders of Disease and Illness*,

4                                                                    **20MJ0780-KSC**

"are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[14]

Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases.[15] In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases.[16]

Anecdotal experience in the Southern District confirms this risk exists here too: local detention facilities commonly suffer widespread infections from illnesses such as chicken pox and influenza, while tuberculosis remains an ongoing concern requiring screening before appearance in court. That risk is particularly concerning given the population of detainees in the Southern District, where high numbers of individuals arrive from other countries with poor or non-existent medical care. Moreover, many detainees lack the education, information, and language skills to communicate effectively that they might be suffering symptoms indicative of COVID-19. As a result, coronavirus infection in our local detention facilities is a near certainty in the coming days and weeks.

//

//

//

---

Prison Legal News, August 15, 2007, available at https://www.prisonlegalnews.org/news/2007/aug/15/prisons-as-incubators-and-spreaders-of-disease-and-illness/.

[14] "Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," Mar. 2, 2020, available at https://bit.ly/2W9V6oS.

[15] *Prisons and Jails are Vulnerable to COVID-19 Outbreaks*, The Verge, Mar. 7, 2020, available at https://bit.ly/2TNcNZY.

[16] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider, Feb. 21, 2020, available at https://bit.ly/2vSzSRT.

**IV. In light of the likelihood of and risk from infection, this Court should amend the conditions of release to prevent unnecessary harm to Mr. Mayne.**

Mr. Mayne is not a danger to the community, and this Court has already concluded that conditions can be set to assure Mr. Mayne's return to court. Mr. Mayne has absolutely no criminal history and is a United States citizen. A pandemic has arrived in San Diego posing a direct and heightened risk to Mr. Mayne from continued detention. This Court should ensure Mr. Mayne is released from custody to practice life-saving social distancing.

Under the Bail Reform Act, this Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). It also must take into account a defendant's "physical and mental condition. *Id.* at § 3142(g)(3)(A). Mr. Mayne recognizes that remaining out of custody is a matter of life and death, providing significant incentive for Mr. Mayne to comply with any conditions of release set by the court and not risk a bench warrant and further detention. That incentive, in turn, provides ample reason for this Court to eliminate the financial condition that has kept Mr. Mayne detained.

In addition, continued detention raises constitutional concerns. The Eighth Amendment bars "cruel and unusual punishments," to include deliberate indifference to unsafe, life-threatening conditions. *See generally*, *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). "[A] remedy for unsafe conditions need not await a tragic event." *Id.* At bottom, the Eighth Amendment forbids placing a frail individual at risk of death in the absence of any danger to the community or serious risk of flight.

The Fifth and Sixth Amendment rights to due process and counsel further weigh against Mr. Mayne's continued detention. The Ninth Circuit has explained that "[a] prisoner's right of access to the courts includes contact visitation with his counsel." *Ching v.* Lewis, 895 F.2d 608, 610 (9th Cir. 1990). The Metropolitan

1  Correctional Center just informed counsel that legal visits for detainees will be
2  suspended from March 13 until at least April 13 because of the risk posed by
3  COVID-19, and other detention facilities are likely to follow suit. Ordering Mr.
4  Mayne released will allow him to meet with counsel in a safe, sanitary environment,
5  and thus fulfill the mandates of the Fifth and Sixth Amendments.
6      In light of these considerations, this Court should release Mr. Mayne on
7  personal recognizance and subject to any further conditions of supervision that may
8  reduce the risk of flight without de facto detaining.

**V. Mr. Mayne requests an emergency hearing to request release if the Court is unwilling to grant personal recognizance based on the instant pleadings.**

11      COVID-19 spreads quickly and kills quickly. If the Court is not willing to
12  grant release on personal recognizance, Mr. Mayne requests an emergency hearing
13  on this motion.

Respectfully submitted,

Dated: March 13, 2020        */s/ Armilla Staley-Ngomo*
ARMILLA STALEY-NGOMO
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone: (619) 234-8467

Attorneys for Defendant
MIGUEL JOSE MAYNE GARCIA