ROBERT S. BREWER, Jr.
United States Attorney
STEPHEN H. WONG
Assistant U.S. Attorney
California Bar No. 212485
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9464
Fax: (619) 546-0450
Email: stephen.wong@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL JOSE MAYNE GARCIA,<br><br>Defendant. | Case No. 20-MJ-0780-KSC<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE**<br><br>Date: March 19, 2020<br>Time: 9:30 a.m. |

The UNITED STATES OF AMERICA, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Stephen H. Wong, Assistant U.S. Attorney, hereby responds in opposition to defendant's Motion to Amend Conditions of Release. Dk 11.[1]

## INTRODUCTION

This Court previously ordered Defendant released on a $25,000 bond, secured by two financially responsible adults. Defendant now moves this court to amend its

---

[1] Defendant filed his Motion for Order for Amendment of Release Condition on Friday, March 13, 2020. On Monday, March 16, 2020, the Court, through its Courtroom Deputy, instructed the Government to file any response by close of business on Wednesday, March 18, 2020. At 1:00 p.m. on March 18, 2020, Chief Magistrate Judge Major emailed further instructions for filing Contested Joint Motions requesting bond modifications. The United States is filing this response pursuant to the Court's instructions received on Monday, March 16, 2020. The United States will meet and confer with defense counsel pursuant to Judge Major's March 18, 2020 email, and if necessary the parties will file a Contested Joint Motion.

previously-imposed bond conditions, and order him released from custody on his own recognizance, or in the alternative to eliminate the requirement that the bond be secured by two financially responsible adults, at least one of whom is related to Defendant and allow bond to be posted by the Bail Project.[2] Defendant does not challenge the court's factual findings underlying this order, nor does he point to any change in his circumstances that would warrant reconsideration of his bond amount. Instead, his request for release from custody is based purely on the speculative prospect of a COVID-19 outbreak at the facility where he is being detained pending trial. Defendant's speculation is both unsubstantiated and unwarranted. There are no known cases of COVID-19 at the facility and no evidence that the facility's staff is unprepared to address such cases if they should arise. Accordingly, the Court should deny the motion.

## STATEMENT

On February 19, 2020, Defendant drove a vehicle containing approximately 38 kilograms of methamphetamine into the United States from Mexico. Dk. 1. He was arrested and charged with the knowing importation of more than 500 grams of methamphetamine, a felony offense that carries a 10-year mandatory-minimum sentence and a presumption of pre-trial detention. At Defendant's initial appearance, this Court denied the government's motion to detain, and after hearing argument from both sides and considering the various § 3142(g) factors, ordered Defendant released on a $25,000 bond secured by two financially responsible adults. Dks 3, 5.

## ARGUMENT

Title 18, United States Code, Section 3142(g) sets forth the factors courts shall consider when determining whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the

---

[2]. According to their website, The Bail Project is a "national nonprofit organization that pays bail for people in need . . ." Because Defendant has no association or loyalty to the Bail Project, forfeiture of this bond against The Bail Project would have no deterrent effect. For that reason, the United States objects to substituting one of Defendant's relatives for The Bail Project.

community." These factors include, among others, (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, and (3) the "history and characteristics" of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g).

None of those factors has changed in the four weeks since this Court ordered Defendant released on a $25,000 bond. Instead, Defendant focuses his motion solely on the health risks he faces from a potential COVID-19 outbreak. To be sure, the Bail Reform Act instructs the Court to consider a defendant's own "physical and mental health," 18 U.S.C. § 3142(g)(3)(A), but the general existence of a pandemic does not have significant bearing on that assessment. Currently, there are no reported cases of COVID-19 at any facility operated by the Bureau of Prisons (BOP). And Defendant does not claim to be infected with the coronavirus such that he might cause an outbreak himself. Instead, Defendant relies on the possibility that he will become infected by someone else at the facility. Even if this Court could weigh such a speculative risk (and properly discount it by risk of Defendant's becoming infected in the community), Defendant's concern is misplaced.

The BOP has been planning for potential coronavirus transmissions since January. On March 13, 2010, BOP announced that it was implementing the Coronavirus Phase Two Action Plan in order to minimize the risk of COVID-19 transmission into and inside its facilities.[3] The Action Plan comprises several preventive and mitigation measures, including the following:

<u>Screening of Inmates and Staff</u>: All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of

---

[3] *See* Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited March 18, 2020 at 11:00 a.m. PST).

exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

<u>Quarantine Logistics</u>:  The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol. Here in San Diego, the MCC has implemented protocols to quarantine any inmate with flu-like symptoms since late January, 2020.

<u>Suspension of Social Visits and Tours</u>:  BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the next 30 days.

<u>Suspension of Legal Visits</u>:  BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been screened for infection in accordance with the screen protocols for prison staff. In San Diego, the MCC has suspended all in-person legal visits until at least April 13, 2020.

<u>Suspension of Inmate Movements</u>:  BOP has also ceased the movement of inmates and detainees among its facilities for at least the next 30 days. Though there will be exceptions for medical treatment and similar exigencies, this will prevent transmissions between institutional populations.

<u>Modified Operations</u>:  Finally, the Action Plan requires wardens at BOP facilities to modify operations in order to maximize social distancing.

Taken together, these measures are designed to sharply mitigate the risks of COVID-19 transmission. Given that there are no reported cases of COVID-19 infection in BOP facilities, and no persons will be admitted to those facilities without being screened for symptoms and risk of infection, the risk that defendant himself will be infected simply as a result of his detention is minimal and entirely manageable. Defendant's speculative concerns to the contrary should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention. See *United States v. Adam Martin*, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (rejecting similar argument, and noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act.")

## CONCLUSION

For these reasons, the United States respectfully requests that the defendant's Motion to Amend Conditions of Release be denied.

DATED: March 18, 2020                           Respectfully submitted,

                                                ROBERT S. BREWER, Jr.
                                                United States Attorney

                                                /s/ Stephen H. Wong
                                                STEPHEN H. WONG
                                                Assistant United States Attorney